UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MONA E. TUCKER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 06-CV-0312-CVE-FHM |
| | ) |
| FRANCISCAN VILLA, INC., | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 24). Plaintiff Mona E. Tucker ("Tucker") filed a complaint (Dkt. # 2) on June 15, 2006, alleging that defendant Franciscan Villa, Inc. ("Franciscan Villa") terminated plaintiff's employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. ("Title VII"). Franciscan Villa now moves for summary judgment on the ground that the undisputed facts fail to establish any genuine issue of material fact. Defendant argues that even if plaintiff has established a prima facie case of discrimination, defendant had a legitimate, nondiscriminatory reason for its actions, and that plaintiff has failed to show that these proffered reasons are, in fact, pretextual. For the reasons set forth below, the Court **grants** the motion for summary judgment.

**I.**

On October 15, 2004, Tucker began working at Franciscan Villa, a nursing care facility, as a licensed practical nurse ("LPN") during the 11:00 p.m. to 7:00 a.m. shift. Dkt. # 27, at 3. Tucker reported to Pamela Mills ("Mills"), the assistant director of nursing, who had interviewed and hired

Tucker. Id. After Tucker had worked approximately three weeks, she submitted a resignation letter to Mills, informing Mills that she could no longer work the graveyard shift. Id. at 3, 8. Tucker quit on November 20, 2004. Id. at 3.

Shortly thereafter, an LPN position for the 7:00 a.m. to 3:00 p.m. shift opened. Id. Tucker spoke to Mills about the opening. Id. Mills informed Tucker that because her resignation had occurred within the previous thirty days, Tucker did not have to complete paperwork to apply for the day-time position. Id. Mills interviewed and hired Tucker again. Id. Tucker began work on December 20, 2004. Id.

During her employment, Tucker received a copy of the Employee Handbook. Id. at 6. The handbook provided for a six month "orientation" or probationary period for new personnel. Id. A probationary employee could be immediately terminated for "improper performance of duties." Id. at 5. Improper performance of duties included "malpractice or other acts detrimental to patient care."[1] Id. Further, the handbook provided that Franciscan Villa could terminate probationary employees for any other legitimate reason and without notice. Id. at 6. The handbook specifically precluded, however, terminating an employee on the basis of race or other protected categories. Id. at 7.

As an LPN charge nurse, Tucker's primary duty at Franciscan Villa was to assure that all residents received proper care, which included taking orders from the physicians, administering medications, ordering drugs from the pharmacy for necessary treatments, and charting and noting

---

[1] In fact, if the improper performance incident involved the health and safety of a resident, any employee could be fired on the spot – regardless of tenure. Dkt. # 24-4, at 8-9.

orders.[2] Id. at 3. The parties dispute whether Tucker neglected to perform some of her duties over a five-day span during her probationary period. Id. at 6. On March 21, 2005, Mildred Myers ("Myers"), the director of nursing at Franciscan Villa, completed a "formal discussion worksheet" documenting Tucker's failure to notify anyone that Tucker did not obtain a resident's pain medication. Dkt. # 27-3, at 6. Myers testified that she discussed the matter with Tucker but did not recall whether she gave a copy of the worksheet to plaintiff. Dkt. # 27-3, at 6-7. Plaintiff admits that Myers completed the formal discussion worksheet, Dkt. # 27, at 4, but denies that the performance failure occurred, that Myers addressed this issue with her, or that Myers provided her with a copy of the worksheet. Dkt. # 27-2, at 8-9.

On March 25, 2005, Myers completed another formal discussion worksheet documenting additional performance offenses by plaintiff. Dkt. # 27-7. These performance offenses consisted of Tucker's failure to: (1) note orders that came from a care plan meeting two days prior, (2) call the laboratory to have blood drawn from a resident, and (3) "get" a list of medications for a resident. Id. Myers noted that the family of the resident complained, and that plaintiff's conduct was jeopardizing residents' lives and safety. Id. Plaintiff again admits that Myers completed the formal discussion worksheet, Dkt. # 27, at 4, but denies receiving these orders, discussing these matters with Myers, or receiving a copy of the worksheet. Id. at 4-5; Dkt. # 27-2, at 12. Plaintiff further admits that she sometimes left orders for the following shift when she could not complete them

---

[2]   According to plaintiff, "charting" means to write down what is happening with a resident on the resident's chart. Id. at 3. "Noting orders" signifies that the LPN has completed the task in the order. Id.

3

during her own shift, in accordance with informal nursing practice.[3]  Dkt. # 27, at 14-16.  To the extent that Tucker disputes receipt of the worksheets, defendant concedes that she might not have received the written documentation.  Dkt. # 31, at 5 n.2.  Normal procedure dictated provision of a copy only upon the employee's request.  Id.

Based on the documented performance failures, Myers recommended the termination of Tucker.  See Dkt. # 27-3, at 8.  The parties agree that on March 25, Mills and Myers met with Tucker and informed her of her dismissal.  Dkt. # 27, at 5; Dkt. # 24-2, at 14.  Myers told Tucker that she was being discharged because of poor performance.  Dkt. # 27-3, at 8.  Tucker disputes this fact. Tucker claims that neither Myers nor Mills gave any specific reasons for her termination other than "things just [we]ren't working out."  Dkt. # 27-2, at 12.  Nevertheless, plaintiff admitted in a hearing before the Oklahoma Employment Security Commission ("OESC") that Myers explained to plaintiff that she was being terminated because "an order . . . found in the chart [] hadn't been noted," "a lab found in the chart [] hadn't been noted," and "an order [] was left for the next shift."[4]  Dkt. # 31-4, at 2.  Tucker further testified that Myers did not ask her to explain the allegations of wrongdoing during their March 25th discussion.  Dkt. # 31-4, at 2-3.

Tucker, an African-American, alleges that she was discharged because of her race.  Dkt. # 27, at 7.  Tucker admits that no one connected with Franciscan Villa ever told her that she was being terminated because of her race.  Id.  Nevertheless, Tucker believes that the administrative staff at

---

[3]   Myers admitted that nurses did, in fact, occasionally leave orders for the next shift.  Dkt. # 27-3, at 10.  Myers added that she would not have known about such issues, however, unless the nurses notified her.  Id. at 11.

[4]   The Court considers this conflicting testimony in its pretext analysis.  See discussion infra Part III.

4

Franciscan Villa acted with racial animus. Id. at 7. Tucker bases this belief on the fact that she was the only African-American LPN or registered nurse at Franciscan Villa during her employ. Id. Tucker admits, however, that Franciscan Villa employed African-Americans as nurses' aids and nursing assistants during that time.[5] Dkt. # 24-2, at 22. Further, Tucker believes that other nurses failed to complete orders during their shifts, or left the orders for the following shifts, and that these individuals were not terminated. Dkt. # 27, at 12. Tucker identified one of these nurses as "female" and another as "Tim" but could not recall any additional information. Id. Similarly, Tucker did not know whether any of these alleged nurses were in their probationary period. Id. at 13. She also did not know when these nurses received the orders or what type of orders were left. Id.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the

---

[5] Defendant's evidence also showed that defendant employed another African-American LPN during Tucker's tenure. Dkt. # 31, at 9; Dkt. # 31-6, at 3. The Court addresses this issue in its pretext analysis. See discussion infra Part III.

5

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### III.

Title VII makes it unlawful for an "employer . . . to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment under Title VII, plaintiff must satisfy the McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); see Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1166-67 (10th Cir. 2007); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). Initially, plaintiff must establish a prima facie case of employment discrimination. McDonnell Douglas, 411 U.S. at 802. Once plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. Id. at 803; Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981); English v. Colorado Dept. of Corrs., 248 F.3d 1002, 1009 (10th Cir. 2001). If defendant makes this showing, the burden shifts back to plaintiff to show that defendant's stated nondiscriminatory reason is mere

pretext for unlawful discrimination. Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004).

**A.  Prima Facie Case**

In the racial discrimination context, plaintiff must show that she (1) belongs to a protected class; (2) was qualified for the position; and (3) was discharged despite her qualifications.[6] Swackhammer, 493 F.3d at 1166; Green v. New Mexico, 420 F.3d 1189, 1192 n. 3 (10th Cir. 2005). "[T]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." Kendrick, 220 F.3d at 1227 (internal quotations marks and citations omitted).  If plaintiff establishes a prima facie case, a presumption of discrimination arises.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).

Here, the parties agree that plaintiff has demonstrated her prima facie case: (1) Tucker, as an African-American woman, belongs to a protected class; (2) Franciscan Villa terminated Tucker's employment, and (3) Tucker was qualified by reason of training and background for the LPN position.  See Dkt. # 24, at 10.  Thus, defendant must proffer a legitimate, nondiscriminatory justification for plaintiff's termination.

---

[6]  This Court recognizes that the Tenth Circuit is split as to whether a fourth element, namely, that plaintiff's position was not thereafter eliminated, is required. See Swackhammer, 493 F.3d at 1166 n.8; see also Antonio v. Sygma Network Inc., 458 F.3d 1177, 1183 n.3 (10th Cir. 2006); Baca v. Sklar, 398 F.3d 1210, 1216 (10th Cir. 2005); Kendrick, 220 F.3d at 1229. Swackhammer noted, however, that in a discriminatory discharge case, if the employer fired the employee because of unsatisfactory conduct, "the status of the employee's former position after his or her termination is irrelevant." 493 F.3d at 1166 n.8 (internal quotation marks and citation omitted).

7

### B. Legitimate, Nondiscriminatory Justification

At this stage, the employer need not rebut evidence established under the first step; it must only rebut the inference that it acted out of discriminatory animus. E.E.O.C. v. Flasher Co., Inc., 986 F.2d 1312, 1318 (10th Cir. 1992). The ultimate burden of proving discrimination remains at all times on plaintiff. Burdine, 450 U.S. at 253. If defendant carries its burden of production, the presumption of discrimination drops out of the case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).

Here, Franciscan Villa maintains that it discharged Tucker because of poor performance, which included her failure to notify Myers that she did not provide a pain medication to a resident, her failure to complete an order from a care plan meeting, her failure to call the laboratory to have blood drawn from a resident, and her failure to "get" a list of medications for a resident.[7] The employee handbook listed "malpractice or other acts detrimental to patient care" as offenses warranting immediate termination. Given that Myers recommended Tucker's termination based on performance failures which – in Myers' opinion – endangered residents' lives and safety,[8] defendant has satisfied its burden of production. See O'Hara v. Saint Francis Hosp., Inc., 917 F. Supp. 1523, 1530 (N.D. Okla. 1995) ("Inadequate patient care is a legitimate, nondiscriminatory reason for firing

---

[7]  To the extent that plaintiff disputes the accuracy or truthfulness of these allegations, the Court addresses this issue in the pretext analysis that follows. See Swackhammer, 493 F.3d at 1167-68 (discussing falsity of claims issue within the pretext analysis); Young v. Dillon Cos., Inc., 468 F.3d 1243, 1250 (10th Cir. 2006) (same); Kendrick, 220 F.3d at 1230 (same).

[8]  Myers testified that "actual or potential harm" could result from an employee's failure to have blood work done. Dkt. # 31-3, at 4-5. For example, if the resident was taking blood thinners and "the lab was not drawn when it should have been drawn," this failure could "cause the resident to bleed out and die." Id.

8

a nurse."). Thus, the burden now shifts to plaintiff to show that defendant's stated nondiscriminatory reason is mere pretext for unlawful discrimination.

### C. Pretext

To show pretext, plaintiff must produce evidence that would, if believed by the trier of fact, show that the true reason for the action was discriminatory. Plaintiff can produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). Plaintiff can prove pretext by showing: (1) falsity in defendant's stated justification for the adverse employment action; or (2) differential treatment of plaintiff and a similarly-situated employee who committed an offense of comparable seriousness. Swackhammer, 493 F.3d at 1167-68; Kendrick, 220 F.3d at 1230. "Even though all doubts concerning pretext must be resolved in plaintiff's favor, [plaintiff's] allegations alone will not defeat summary judgment." Morgan, 108 F.3d at 1324. "Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999).

Here, Tucker challenges Franciscan Villa's proffered justification on both falsity and differential treatment grounds. Tucker makes several arguments: (1) the allegations of wrongdoing never occurred; (2) plaintiff did not receive copies of either worksheet during the alleged oral reprimands; (3) Franciscan Villa failed to provide plaintiff with any warnings or opportunities to improve; (4) plaintiff received no oral or written reprimands prior to March 21, 2005; (5) Franciscan Villa employed no other African-American nurses during plaintiff's tenure; and (6) other similarly-

9

situated nurses received differential treatment. The Court will address plaintiff's falsity allegations first.

### 1. Falsity

The Tenth Circuit has held that "the factfinder must be able to conclude, based on a preponderance of the evidence, that <u>discrimination</u> <u>was</u> <u>a</u> <u>determinative</u> <u>factor</u> in the employer's actions – simply disbelieving the employer is insufficient." <u>Young</u>, 468 F.3d at 1250 (quoting <u>Miller v. Eby Realty Group LLC</u>, 396 F.3d 1105, 1111 (10th Cir. 2005)) (internal quotation marks omitted) (emphasis in original). The relevant question is not whether defendant's proffered justification is "wise, fair or [even] correct," but whether defendant "honestly believed those reasons and acted in good faith upon those beliefs." <u>Id.</u> (internal quotation marks and citation omitted). A pretext challenge requires a court "to look at the facts as they appear[ed] to the person [who] ma[de] the decision to terminate plaintiff." <u>Kendrick</u>, 220 F.3d at 1231. A court's "role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." <u>Young</u>, 468 F.3d at 1250.

Here, plaintiff claims that she "did not even learn of the alleged reasons behind her termination until her unemployment compensation appeal hearing." Dkt. # 27, at 23. Plaintiff points to her deposition, wherein she testified that she did not know of the reasons for her termination until she filed for unemployment and received the worksheets from Franciscan Villa at that time. <u>Id.</u>; <u>see</u> Dkt. # 27-2, at 14. This testimony, however, contradicts Tucker's previous statements under oath during the OESC hearing. Tucker answered unambiguous questions regarding her discussion with Myers during their March 25th meeting. Without question, Tucker very clearly

stated "I went to her office, and when I got in there she said, you know, that things [we]re not working out and there was a lab found in the chart that hadn't been noted and there was an order that was left for the next shift. She said, 'I just don't know,' you know. 'It's not working out. We're going to, you know, let you go.'" Dkt. # 31-4, at 2-3. Accordingly, the Court must resolve plaintiff's apparently inconsistent testimony.

Franks v. Nimmo, 796 F.2d 1230 (10th Cir. 1986), provides the general guidelines for determining whether plaintiff has submitted sham testimony. In Franks, the plaintiff submitted an affidavit in support of his motion to reconsider a summary judgment against him. Id. at 1235-37. However, this affidavit contradicted his previous deposition testimony, and the district court refused to consider the affidavit as a basis for creating a genuine issue of material fact. Id. at 1237. The Tenth Circuit listed several factors that are useful when determining if an affidavit contradicts prior testimony and creates a sham factual issue, such as:

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

Id. The Tenth Circuit found that plaintiff's deposition testimony was unequivocal and the affidavit was produced only after the district court granted defendant's motion for summary judgment, which justified a finding that the affidavit raised a sham factual issue. Id. at 1237-38.

Here, the Court must disregard Tucker's later, contradictory deposition statements, because these statements appear to be an attempt to create a sham issue. Tucker's deposition testimony is not "based on evidence that was unavailable to h[er] at the time of the [OESC hearing]." Kendrick, 220 F.3d at 1224 n.2. As of March 25, 2005, plaintiff definitively knew whether Mills and Myers

had met with her and explained the reason for her termination. While defendant admits that Tucker may not have actually received copies of the worksheets at the time of her dismissal, this admission does not impact the analysis. Normal procedure did not dictate production of the worksheets absent an employee request, and Tucker does not claim that she made such a request. Additionally, Tucker's deposition testimony "does not appear to be an attempt to clarify confusing testimony given during the [OESC hearing]." Id. Because Tucker initially and clearly testified that she received an explanation for her March 25th dismissal, she cannot later contradict this sworn testimony in an effort to create a sham factual issue.

Consequently, the Court refuses to consider plaintiff's deposition testimony as creating a genuine issue of material fact as to falsity. The Court finds, therefore, that Myers and Mills met with Tucker on March 25, 2005, and informed plaintiff that she was being discharged because of poor performance.[9] Even if defendant's proffered justification was not "wise, fair, or correct," Young, 468 F.3d at 1250, Tucker has failed to establish that Franciscan Villa did not honestly believe that plaintiff had improperly performed her duties.

---

[9] A discrepancy exists as to the identity of the individual who actually made the decision to terminate Tucker. Myers testified that Don Pearce ("Pearce"), the nursing home administrator, elected to terminate Tucker after a discussion with Myers. Dkt. # 27-3, at 5, 12. Yet Pearce did not recall any conversations with Myers or Mills about Tucker. Dkt. # 27-5, at 4. Plaintiff points to this discrepancy as evidencing pretext. Whether Myers or Pearce terminated Tucker is irrelevant in the analysis, however, because Tucker – herself – admitted that Myers completed the formal discussion worksheets, informed plaintiff of her dismissal, and told her why she was being terminated. Further, Pearce and Mills testified that Myers had the authority to terminate staff; they simply did not remember exactly who terminated Tucker. Dkt. # 27-4, at 2, 8; Dkt. # 27-5, at 4. This issue creates no genuine issue of material fact. Tucker provides no evidence of discriminatory intent on the part of either Myers or Pearce other than her conclusory allegation of racial animus.

The Court need only briefly address Tucker's remaining arguments, as they lack substantive merit in light of the evidence. Tucker maintains that pretext can be demonstrated by Franciscan Villa's failure to provide her with any warnings or opportunities to improve. Plaintiff cites Alexander v. Gardner-Denver Co., 519 F.2d 503, 505-507 (10th Cir. 1975), in support of her argument. This case is distinguishable from Alexander, however, because Franciscan Villa had no established practice or policy of issuing several warnings for health and safety related offenses before terminating the offender.[10]  Here, the Employee Handbook very plainly stated that malpractice or other acts detrimental to patient care could result in immediate discharge. Therefore, Franciscan Villa's failure to give Tucker repeated warnings or improvement opportunities does not evidence a violation of established policies or practice.

Next, plaintiff asserts that her performance record at Franciscan Villa should factor into the pretext determination. Plaintiff testified that she received no oral or written reprimands prior to March 21, 2005. Mills, her immediate supervisor, could not specify any instance where Tucker did

---

[10]  The Court notes sue sponte that Franciscan Villa management gave conflicting testimony regarding the typical disciplinary practice in a non-health and safety related incident. The director of nursing stated that the progressive disciplinary policy, which entailed a verbal warning, a second warning, and then a decision-making leave prior to termination, applied to both probationary and long-term employees. Dkt. # 27-3, at 3. The nursing home administrator, however, testified that only non-probationary employees benefitted from this policy. Dkt. # 27-5, at 3. The human resources manager for Franciscan Villa corroborated the administrator's testimony. Dkt. # 24-3, at 3; see Dkt. 24-4, at 12-13.

Notwithstanding plaintiff's failure to note this factual discrepancy, the discrepancy fails to impact the analysis because it does not present a genuine issue of material fact. Franciscan Villa terminated Tucker because she jeopardized the health and safety of residents. This action unquestionably merited immediate termination under defendant's policies – not repeated warnings or opportunities to improve. In light of the facts, plaintiff's reliance on Alexander might have created a genuine issue of material fact if Tucker had been terminated for non-health and safety related reasons.

13

not meet the requirements of her position, other than the documented performance failures. Dkt. # 27, at 26. Plaintiff cites no case law supporting her position, however. See Dkt. #27, at 22. While this Court notes that "glaring contradictions" between the employee's evaluations and the employer's proffered justification for dismissal may lead to an inference of pretext, Green, 420 F.3d at 1194, this case does not present such an issue. Plaintiff received no performance evaluations during her first three months at Franciscan Villa. Moreover, even if the Court assumes, arguendo, that plaintiff was a model employee prior to March 21, this fact alone does not dictate the conclusion that defendant terminated plaintiff because of her race. Defendant could have honestly believed that Tucker threatened the residents' lives and safety based on her documented performance failures. Again, plaintiff must offer more than conclusory allegations, unsupported by specific facts, to overcome summary judgment.

Finally, plaintiff argues that the fact that she was the only African-American nurse at Franciscan Villa during her tenure evidences pretext. In making this argument, Tucker disregards the fact that Mills hired her on two separate occasions, that defendant offered evidence that it employed another African-American LPN during Tucker's tenure, Dkt. # 31, at 9; Dkt. # 31-6, at 3, and that defendant employed African-American nursing aids and nursing assistants at that time. In discriminatory discharge cases, "overall employment statistics have little bearing on the specific intentions of the employer in making particular [employment] decisions . . . [and] will rarely suffice to rebut an employer's legitimate, nondiscriminatory reasons for a particular adverse employment action." Antonio, 458 F.3d at 1184 (internal quotation marks and citation omitted) (alterations in original). Even if Tucker had been the only African-American employee, Tucker's evidence "concerning the low number of [Franciscan Villa]'s [black] employees [] says nothing about why

14

she was terminated." Id. Plaintiff must provide more than mere speculation about numbers. Therefore, the Court concludes that plaintiff has failed to establish falsity in defendant's stated justification for her termination.

### 2. Differential Treatment

A plaintiff may also demonstrate pretext by providing evidence that he or she "was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness." Kendrick, 220 F.3d at 1232. An employee qualifies as similarly-situated "if the employee deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline.'" Id. (quoting Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)). The other employee and plaintiff should also share "relevant employment circumstances." Id.; see Green, 420 F.3d at 1194. Title VII does not, however, render "unexplained differences in treatment" or "inconsistent or irrational employment practices" per se illegal. Flasher, 986 F.2d at 1319.

Here, Tucker maintains that other nonminority nurses received differential treatment. Plaintiff claims that Franciscan Villa did not terminate other nurses who failed to complete orders during their shift, notwithstanding the fact that she cannot identify these nurses beyond gender and one surmised first name. Even if the Court assumes that these alleged comparators reported to the same supervisors, Tucker has offered no evidence of: (1) the comparators' probationary status, (2) the type of orders the comparators received, or (3) when the comparators received their orders. Plaintiff responds with two arguments.

First, Tucker asserts that her inability to "specifically identify, by name, individual nurses who were treated better than her" is irrelevant, because no party has been able "to locate any

authority, requiring the full identity of comparators." Dkt. # 27, at 25. While plaintiff is correct that no binding Tenth Circuit precedent encompasses a "specific identity" holding, a court would have significant difficulty comparing similarly-situated employees if it could not discern their identity.[11] Second, plaintiff asserts that whether her alleged comparators were probationary employees is irrelevant, because "nurses who leave orders for another shift should be subject to reprimand regardless of tenure." Dkt. # 27, at 26. Yet plaintiff's argument confuses employment status with punishment. Probationary status is relevant because probationary employees were subject to different disciplinary policies than were nonprobationary employees. See Green, 420 F.3d at 1195 (comparing the employees' probationary and nonprobationary statuses). Tucker responds that "no other employee faced allegations of wrongdoing for leaving an order for an oncoming shift other than" herself. Dkt. # 27, at 26. This argument ignores, however, the fact that Franciscan Villa did not discharge Tucker simply for leaving an order. Myers recommended Tucker's termination because she believed Tucker jeopardized residents' lives and safety.[12] Moreover, Tucker provides no evidence – other than her self-serving testimony – to support her assertion. Plaintiff has failed to demonstrate that defendant treated similarly-situated employees differently.

---

[11]    If fact, logic dictates that only one scenario would support plaintiff's position: The identity of the comparators would be irrelevant only if all the other employees reported to the same supervisor, qualified as nonminorities, committed similarly serious offenses, shared comparable work histories, worked during the same time period, and abided by the same company policies. See generally Swackhammer, 493 F.3d at 1171-72; Green, 420 F.3d at 1194-95; Kendrick, 220 F.3d at 1232-34.

[12]    This type of infraction – in fact – merited the termination of any employee. Had plaintiff argued this position and pointed to other nonminority nurses, who jeopardized residents' lives and safety and were not terminated, a genuine issue of material fact might have arisen, notwithstanding a distinction in employment status.

16

Plaintiff has offered "no independent evidence, beyond [her] mere conjecture, that would allow a reasonable factfinder to infer that [racial] discrimination was the actual motivation for her termination." Swackhammer, 493 F.3d at 1172; see Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) ("[P]laintiff['s] mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."). This Court, therefore, concludes that defendant's termination of plaintiff was not pretextual.

**IV.**

The Court finds that plaintiff has failed to establish a genuine issue of material fact with respect to her Title VII claim. Therefore, defendant is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 24) is **granted**. Therefore, defendant's motion in limine (Dkt. # 30) is **moot**. A separate Judgment is entered herewith.

**DATED** this 17th day of September, 2007.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT